UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

_____

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

       v.

CURT LUDWIG DEWITZ,

               Defendant.

_____

CASE NO:
3:24-CIV-631

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission (the "SEC" or "Commission"), alleges as follows:

### SUMMARY

1.     This action involves unlawful trading in the securities of Cleveland BioLabs, Inc. ("Cleveland BioLabs") and Immune Therapeutics, Inc. ("Immune Therapeutics") prior to an October 20, 2020, announcement that Cytocom, Inc. ("Cytocom") would acquire Cleveland Biolabs in a reverse merger transaction.

2.     While the transaction was being negotiated, Curt Ludwig Dewitz ("Dewitz" or "Defendant") traded on the basis of material nonpublic information, in breach of his duty to his employer, Cytocom.  Specifically, Dewitz purchased

the common stock of Cleveland BioLabs, the target company, and the common stock of Immune Therapeutics, a publicly traded shareholder of Cleveland BioLabs, that stood to benefit from the transaction.

3.    Dewitz purchased Cleveland BioLabs' common stock over the course of the summer and fall of 2020 in several accounts.  Dewitz purchased Immune Therapeutics' common stock on the day before the public announcement.

4.    By engaging in the conduct described above, Dewitz violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17.C.F.R. § 240.10b-5], and unless enjoined will continue to engage in transactions, acts, practices, and courses of business similar to those alleged in this complaint.

5.    The Commission seeks a final judgment enjoining Dewitz from future violations of these same provisions of law, ordering him to disgorge his illicit gains together with prejudgment interest thereon, ordering him to pay a civil money penalty, and imposing a public company officer and director bar on him.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to Section 21(d), 21(e), 21A(a)(1), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1(a)(1), and 78aa(a)].

2

7.    Dewitz made use of the means and instrumentalities of interstate commerce or of the mails, or of a facility of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

8.    Venue is proper in this District pursuant to Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], because Defendant currently lives in the Northern District of Florida, within the Pensacola Division.

### DEFENDANT

9.    **Dewitz**, age 52, is a United States citizen who resides in Inlet Beach, Florida.

### RELATED ENTITIES

10.    **Immune Therapeutics** was a Florida corporation headquartered in Winter Park, Florida.  It was a biopharmaceutical company that developed products for use in the treatment of protexopioid-related immunotherapies.  Its common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on the OTC Market under the symbol "IMUN."  In March of 2023, the company announced that it had changed its name to Biostax Corporation.  Its common stock now trades on the OTC Market Group exchange under the symbol "BTAX."

3

11.    **Cytocom** was a Florida corporation headquartered in Winter Park, Florida.  It was originally formed in 2014 as a subsidiary of Immune Therapeutics. Through a series of transactions, Immune Therapeutics' ownership interest in Cytocom varied over time, but throughout the period of trading described herein, it held an ownership interest.  As a result of the merger with Cleveland BioLabs, Cytocom became a public company.  Its common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on the Nasdaq Select Market under the symbol "CYTO."  It subsequently changed its name to Statera Biopharmaceutical Inc.  Statera Biopharmaceutical's common stock then traded on the Nasdaq Select Market under the symbol "STAB."  It has since been delisted, and it now trades on the OTC Market Group exchange.

12.    **Cleveland BioLabs** was a Delaware corporation headquartered in Buffalo, New York.  It was a biopharmaceutical company that developed products for use in mitigation of radiation injury and immuno-oncology.  Prior to the merger with Cytocom, its common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on the NASDAQ Capital Market under the symbol "CBLI."

## FACTUAL ALLEGATIONS

13.    Immune Therapeutics formed Cytocom in 2014 as a subsidiary. Immune Therapeutics held an ownership stake in Cytocom, which as of August 12,

4

2020, stood at 13.5%.

14.    In April of 2020, Cytocom hired Dewitz to be its Director of Business Development.  His principal function was to assist with a strategy for Cytocom to become publicly traded by merging with a public company.

15.    Dewitz was tasked with finding suitable listed companies to approach. In that regard, he reviewed biopharmaceutical companies that were traded on NASDAQ but that had received notice that they were in danger of being delisted for failure to meet share price or market capitalization requirements.

16.    Dewitz conferred with the Cytocom Chief Executive Officer ("CEO") in a search for a biopharmaceutical company that was also engaged in research and development of products that were a good fit with those of Cytocom.

17.    That process identified Cleveland BioLabs as a potential merger target, in part because Cleveland BioLabs' primary asset was a drug that was being developed as a potential treatment for acute radiation syndrome and that was compatible with Cytocom's research and development work.

18.    With the Cytocom CEO's approval, on April 14, 2020, Dewitz contacted the former CEO and director of Cleveland BioLabs to determine whether Cleveland BioLabs had interest in pursuing a business combination with Cytocom.

19.    Dewitz' employment agreement with Cytocom was finalized on April 22, 2020.  It specifically provided that Dewitz was not to disclose or use

Cytocom confidential information for his own purposes.

20.    The initial contact between Dewitz and Cleveland BioLabs went well, and negotiations began.  Cytocom kept Dewitz informed as negotiations continued. Dewitz was in frequent telephone contact with Cytocom's CEO and was regularly copied on e-mails that tracked the progress of the negotiations and of due diligence.

21.    For example, on May 8, 2020, Dewitz replied to an e-mail from the Cytocom CEO noting that NASDAQ had approved a request to reserve "CYTO" as the ticker symbol that could be used upon closing of a business combination. Later that month, on May 19, 2020, Dewitz was copied on an e-mail circulating an early draft of the merger agreement.

22.    Through June and July of 2020, the pace of negotiations slowed, as Cytocom pursued the acquisition of another private company, a transaction which closed on July 18, 2020.  On June 11, 2020, the former Cleveland BioLabs CEO sent Dewitz an email inquiring about the status of the negotiations.  Dewitz and the Cytocom CEO exchanged e-mails setting up a call, to brief the former Cleveland BioLabs CEO.  That e-mail thread bore a subject line of "M&A progress."

23.    The former Cleveland BioLabs CEO reached out again on July 14, 2020, and Dewitz set up another call with the Cytocom CEO and the former Cleveland BioLabs CEO to discuss the status of the merger.  After the intervening

acquisition closed, negotiations between Cleveland BioLabs and Cytocom resumed.

24.     Throughout the merger negotiations, Dewitz was in close communication with the Cytocom CEO, with nearly daily telephone calls between them, and multiple calls on some days.  Several of these calls preceded Dewitz' trades.

25.     During the summer of 2020, Dewitz had a conversation with the Cytocom CEO, in which he inquired about the propriety of trading in the stock of Cleveland BioLabs, and the Cytocom CEO responded by cautioning Dewitz not to trade ahead of the merger announcement.

26.     On August 4, 2020, there were two late night calls between Dewitz and the Cytocom CEO that each lasted slightly more than a half hour.  The following morning, Dewitz made the first in a series of purchases of Cleveland BioLabs common stock in a joint account with his wife at TD Ameritrade.  His initial purchase of 735 shares, at $2.53 per share, was followed by several additional purchases that month at prices fluctuating between $1.95 and $2.60.

27.     On the morning of August 12, 2020, Dewitz purchased 1,360 shares of Cleveland BioLabs common stock, this time in his own HSA account at TD Ameritrade at two price points, $2.60 and $2.5942 per share.  That trade came after an 18-minute call with the Cytocom CEO at 6:30 the previous evening.

7

28.    On August 21, 2020, Dewitz used his wife's IRA account at Fidelity to purchase 200 shares of Cleveland BioLabs common stock.  Dewitz had control over his wife's account, and he made the trading decisions for that account. Dewitz and his wife have been married since 2005, and they share their finances.

29.    Dewitz continued to use his wife's IRA account at Fidelity to make additional purchases of Cleveland BioLabs common stock that month, purchasing 9800 shares on August 24, 2020, at $2.36 per share; 10,000 shares on August 25, 2020, at $2.31 per share; and another 4400 shares on August 26, 2020, at $2.03 and $2.04 per share.  That account had just been opened and funded by a rollover contribution of slightly more than $55,000, on August 12, 2020.

30.    The August purchases of Cleveland BioLabs common stock in this account were the only securities purchased or held there.   The share price had fallen during the month, but Dewitz continued purchasing Cleveland BioLabs stock, with the ending balance for the month in that account showing an unrealized loss of more than $10,000.

31.    Dewitz made two more August purchases of Cleveland BioLabs stock, in the joint account with his wife at TD Ameritrade.  On August 25, 2020, he purchased 3,881 shares at $1.95 per share, and on August 27, 2020, he purchased another 1,940 shares at $1.9499 per share.

8

32. During the summer of 2020, Dewitz had a conversation with the Cytocom CEO, in which he noted that the stock price of Immune Therapeutics was likely to increase if there was a Cytocom\Cleveland BioLabs merger, and the Cytocom CEO responded by cautioning Dewitz not purchase Immune Therapeutics stock.

33. On September 11, 2020, Dewitz made a single trade in his joint account with his wife at TD Ameritrade of 16,000 shares of Cleveland BioLabs' common stock at $2.27 per share. The previous day he had had several telephone calls with the Cytocom CEO, totaling just under an hour.

34. On October 16, 2020, the merger agreement between Cleveland BioLabs and Cytocom was executed.

35. On October 19, 2020, Dewitz purchased 11,271 shares of Cleveland BioLabs common stock in the joint account with his wife at TD Ameritrade, at prices ranging from $2.96 to $3.12 per share.

36. On October 19, 2020, Dewitz purchased one million shares of Immune Therapeutics' common stock in the joint account with his wife at TD Ameritrade, an order which was filled at three different price points ranging from $.0122 to $.0145 per share.

37. On October 20, 2020, Cleveland BioLabs and Cytocom jointly released a public announcement regarding their entry into an agreement, the effect

of which would be to combine the two companies, so that Cytocom would survive the merger as a publicly traded company.

38.     Cleveland BioLabs' stock price rose after the announcement, closing at $3.17 -- a gain of 46% from the previous day.

39.     Immune Therapeutics made a simultaneous public announcement about the transaction, and saw similar gains, as its stock closed at $.0375 per share, a gain of 33% from the previous day.

40.     Dewitz had control over all the trading accounts described above and placed each of the trades set forth above.

41.     The aggregate amount of the illicit profits from unlawful trades that Dewitz placed was at least $70,000.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act
and Rule 10b-5(a) Thereunder)**

42.     Paragraphs 1 through 41 are realleged and incorporated by reference herein.

43.     Dewitz knowingly or recklessly by use and means or instrumentalities of interstate commerce or of the mails, or a facility of a national securities exchange, in connection with the purchase or sale of Cleveland Biolabs and Immune Therapeutics securities, directly or indirectly, employed devices, schemes, or artifices to defraud, and engaged in acts, practices, or courses of business which

would operate as a fraud or deceit upon a person by purchasing Cleveland Biolabs and Immune Therapeutics securities while in possession of material, nonpublic information that he obtained through the course of his employment, in breach of his duty of trust and loyalty to his employer and in breach of his employment agreement.

44.   By reason of the foregoing, Dewitz directly or indirectly violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [28 C.F.R. § 240.10b-5].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court find the Defendant committed the violations alleged and:

### A.

### Permanent Injunctive Relief

Issue a permanent injunction, enjoining Dewitz from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R.§ 240.10b-5];

**B.**

**Officer and Director Bar**

Issue an order barring Dewitz from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

**C.**

**Disgorgement**

Issue an order directing Dewitz to pay disgorgement of $70,382.96, representing net profits gained as a result of the conduct alleged herein, together with prejudgment interest thereon in the amount of $14,809.53.

**D.**

**Civil Penalty**

Issue an order directing Dewitz to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1] of $70,382.96; and

**E.**

**Further Relief**

Grant such other and further relief as the Court may deem just, equitable, and necessary.

Date:  December 18, 2024

Respectfully submitted,

/s/ James M. Carlson
James M. Carlson
S.D. Florida Bar # A5501534
Attorney for Plaintiff
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
(202) 551-3711
Carlsonja@sec.gov

*Of Counsel*
Christopher G. Margand
Thomas E. Woods
David Frohlich
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549

13